ABRAHAM J. KAMINSKY, Respondent, v. ALBERT M. KAHN, Appellant.

First Department, April 18, 1961.

*Samuel Shapiro* for appellant.

*Samuel Robert Weltz* of counsel (*Milton B. Franklin* with him on the brief), for respondent.

RABIN, J.   The defendant-appellant appeals from an order denying his motion to dismiss the complaint pursuant to subdivision 4 of rule 106 and subdivision 4 of rule 107 of the Rules of Civil Practice.

The plaintiff, owner of the controlling block of stock in Spear & Company, finding himself in financial difficulty, attempted to extricate himself therefrom by entering into the agreement which is the subject of the lawsuit.   In outline, this agreement provided for the sale of the Spear & Company stock to defendant in return for which defendant agreed to satisfy certain obligations of the plaintiff.   There was retained for the plaintiff, however, a one-third interest in the dividends received on the stock and, in the event of a sale to a third party, he was to receive one third of so much of the purchase price as exceeded the amounts originally advanced by the defendant.   Furthermore, the plaintiff was to have a first option to meet any bona fide offer in the event defendant desired to sell.

In a prior equity action, arising out of this same agreement, defendant's motion to dismiss the complaint for insufficiency was granted by Special Term.   In dismissing that complaint Special Term did so without prejudice to the commencement of a new action at law.   Upon appeal this court modified to the extent

of permitting the institution of a new action either at law or in equity (*Kaminsky v. Kahn*, 9 A D 2d 881). The Court of Appeals thereafter affirmed (*Kaminsky v. Kahn*, 8 N Y 2d 831).

The plaintiff then commenced the instant action in which he again seeks relief in equity. The defendant attacks this complaint on the ground that it is barred by the prior decisions and that it does not make out a cause of action. If this new complaint be substantially the same as the complaint in the first action, then, of course, we are bound to dismiss. On the other hand if there be new matter pleaded which gives rise to a good cause in equity we are not bound by the previous determination of the Court of Appeals and we should not dismiss.

An examination of this present pleading reveals that it differs from its predecessor in two material respects. First, it is now alleged that the stock which was the subject of the agreement represented control of the corporation. Secondly, it is alleged that the defendant, exercising the control he had gained from the stock purchased from the plaintiff, and for the purpose of impairing plaintiff's rights under the agreement, caused the corporation to purchase all of the stock of another corporation (Acme) owned by him and that such purchase did so impair his rights. We hold that the pleading of these additional allegations gives rise to a sufficient cause of action in equity in plaintiff's favor not barred by the prior dismissal.

In reaching this conclusion we recognize that under the terms of the agreement the plaintiff sold his stock to the defendant and title thereto passed to the latter. However, the defendant did not acquire unfettered control of that stock. He could not do as he pleased with the stock for his holdings were subject to the rights of the plaintiff expressly retained by him under the agreement. The agreement provided that the plaintiff was to have a first option to repurchase the stock; he was to receive one third of the dividends thereon and, in the event of a sale thereof to a third party, he was entitled to one third of the sales price over and above the moneys advanced by the defendant. It is the protection of these rights that entitles the plaintiff to equitable relief.

The right of first option is allegedly violated in that it is asserted that the defendant has been selling, and threatens to continue to sell the stock to third parties, without first giving the plaintiff the right to act upon his option and further in that the transactions were not bona fide. Such conduct in derogation of plaintiff's rights, if proven, entitles him to injunctive relief — not prayed for in the original complaint. And it is not fatal to the complaint that he failed to plead that the stock is unavailable

on the open market and that he was ready, willing and able to exercise his option at the time the alleged sales were made. Under the agreement the plaintiff was only called upon to act upon his option at the time of the receipt of a bona fide offer by the defendant. The complaint, alleging that the sales made by the defendant were not bona fide and at arm's length, the time had not yet come for the plaintiff to act upon the option, have his money ready or go into the open market to seek substitute stock. The time for the plaintiff to do these things could not be thus accelerated by the defendant.

The purchase of all the Acme stock at inflated prices and the dilution of the original stock by the issuance of additional Spear stock, are alleged to have been effected by the defendant for the express purpose of impairing the plaintiff's rights under the agreement and did so impair his rights. If that can be proven he would have a good case which would be on a cause of action entirely new and different from that attempted to be alleged in the first complaint. Implicit in this complaint is that the option given to the plaintiff was given to enable him to regain control. However, it is asserted that the alleged conduct of the defendant was such as to preclude plaintiff from regaining such control. Furthermore, the purchase of the Acme stock at an inflated price and the dilution of the Spear stock could very well be proven to have adversely affected plaintiff's interest in the dividends from the Spear stock and to have lessened the value of the interest retained by the plaintiff in the event of sale of such stock to a third party. In any agreement there is an implied covenant that nothing will be done to impair the rights of a party to such agreement (*Wood* v. *Duff-Gordon,* 222 N. Y. 88).

We are not unmindful of the fact that this complaint is not artfully pleaded and contains much that is surplusage with respect to the equitable causes hereinabove referred to. However, if " in any aspect upon the facts stated [the plaintiff is] entitled to a recovery " (*Abrams* v. *Allen,* 297 N. Y. 52, 54) ; a motion to dismiss for insufficiency must be denied (*Dulberg* v. *Mock,* 1 N Y 2d 54).

It is also apparent that portions of the relief sought may be inappropriate and unobtainable by the plaintiff in this action. However, we need not pass upon the propriety of the relief sought since a prayer for inappropriate relief does not require a dismissal for insufficiency so long as plaintiff demonstrates the right to some relief (*Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79). The relief to which the plaintiff is ultimately entitled, if any, can be moulded by the court after trial.

It may well be that this complaint is vulnerable to corrective motions but even if that be so, such fact has no bearing on the complaint's sufficiency, which essentially is the only issue with which we are here concerned.

Accordingly, the order of Special Term denying the motion to dismiss should be affirmed, with costs.

STEUER, J. (dissenting). A prior action between these parties resulted in a dismissal of the complaint. Special Term allowed plaintiff to bring a new action for different relief at law. This court modified to the extent of allowing the new action to be at law or in equity (9 A D 2d 881) and this determination was affirmed by the Court of Appeals (8 N Y 2d 831). This is the new action brought in purported compliance with the permission so granted.

The complaint in the prior action set out facts showing that defendant had acquired certain stock from the plaintiff according to a contract therein set out. It alleges certain acts claimed to be breaches of that contract. And it sought as relief an accounting, damages, and the appointment of a referee to liquidate the stock. The complaint in this action sets out the same contract and asks for the same relief. It does, however, set out additional acts of defendant which are claimed to be breaches.

While the specific grounds for the affirmance of the dismissal of the prior complaint cannot be deduced from the mere fact of affirmance, it is at least clear that it must have been held that the relationship between the parties would not support an action for an accounting. According to that complaint there was a contract and it was breached by defendant. If no accounting was permissible it must have been because no relationship of trust to support the equitable remedy was set out. Absent such relationship, the nature or number of breaches will not create it. Consequently, in the essential feature which rendered the first complaint defective, the situation is in no way changed by the additional facts alleged. Nor is there any consolation to the plaintiff to be gained from the fact that the new action allowed to be brought might be in equity. If the facts warrant, plaintiff might sue for several different forms of relief all sounding in equity. In addition to other possible actions he might seek reformation of the contract; he might seek to rescind; he might enjoin future breaches or ask for specific performance. But he could not on allegations of the same relationship ask for relief that it was determined that that relationship would not support (*Joannes Bros.* v. *Lamborn,* 237 N. Y. 207).

But quite aside from the cogent grounds of the first adjudication and taking the complaint as a *de novo* declaration, it states no grounds for the relief requested. Its pertinent allegations are: In October, 1957 plaintiff was the owner of 52% of the outstanding common stock and 83% of the second preferred stock of Spear & Co., which said stock had cost him over $2,000,000. The stock was then· in the possession of Standard Financial Corporation as collateral security for a loan of $275,000 to plaintiff. In addition, another company had a judgment against plaintiff for over $380,000. At the same time defendant had an option to purchase over 50% of the first preferred stock of Spear & Co., which stock was then owned by third persons. Plaintiff and defendant then entered into an agreement whereby defendant . agreed to satisfy the afore-mentioned judgment against plaintiff. Plaintiff agreed to deliver his common and second preferred stock subject to the lien of Standard Financial Corporation to defendant so as to constitute defendant the " sole and absolute owner " thereof. Plaintiff was to receive one third of any dividends thereafter paid on the Spear stock and one third of any sum realized by defendant from any sale of the stock over and above the amount of the judgment plus the Standard Financial Corporation's lien. If defendant desired to sell all or any part of the stocks, he must first offer to make the sale to plaintiff on the same terms on which he proposes to sell. Failing compliance by plaintiff with the terms in 10 days, defendant's right to sell on those terms is absolute. The agreement contained further provisions in regard to the Standard Financial Corporation loan which in view of what happened are not significant. Simultaneously with this contract a letter agreement was executed by the parties which provided that if Spear & Co. merged with or was otherwise acquired by a corporation called Acme Hamilton Manufacturing Co., certain assets of Spear & Co. would be given a certain value in the transaction. Thereafter defendant satisfied the afore-mentioned judgment and plaintiff delivered an assignment and bill of sale of the stock. Thereafter defendant paid the Standard Financial Corporation loan and received the stock certificates from that company, and thereafter controlled Spear & Co. It is then alleged that defendant made sales of this stock in excess of 100,000 shares without affording plaintiff the option to purchase, and at prices below the market value, and that defendant received considerations for the sales which were not reflected in the price received. It is alleged that defendant converted the second preferred stock into common stock so that he could sell a portion

and still retain control; that he has hypothecated stock; that he has threatened not to sell any more stock; that defendant has refused to account for stock he has purchased since the agreement; and that he has voted his stock to purchase the Acme Hamilton Manufacturing Corporation at a price $3,000,000 in excess of its value.

From the foregoing it is as clear as words can make it that defendant became the absolute owner of the stock and he could do as he wished with it. Plaintiff's only interest is to receive one third of the dividends paid on it and in case of sale to have the first refusal on the terms offered. From this plaintiff seeks to spell out an obligation by defendant to liquidate his holdings of the stock. There is no support for such a contention either in the contract or in any rule of law or equity. The confusion resulting from the exaggerated notion of the plaintiff's interest in the stock is that he complains because defendant has sold stock and threatens to sell more, and also because he has not sold the stock and threatens not to sell it. Plaintiff seeks relief because he will sell and because he will not.

Nor is there any property right in the stock to be found in any fact alleged. Not being a stockholder, he cannot sue for waste, nor has he any interest that waste would affect, as defendant, assuming he occupies some position of responsibility in the corporation, owes no duty to plaintiff by virtue of that position.

All that has been alleged is an imperfect claim for damages resulting from the sales made for which the damage would be measured by the difference between the value and the price received. The cause of action is imperfect because there is no allegation that had the stock been offered to plaintiff in accord with the contract he would have been ready, willing and able to make the purchase. But assuming this allegation to be included, this is not the cause of action that plaintiff is asserting and is one which he apparently declines to assert.

The complaint may be searched in vain for the assertion of any other claim. The complaint leaves the situation in regard to dividends severely alone — there is no allegation that the corporation did not pay dividends, or did pay them, nor that dividends were affected by any of the corporate maneuvers attributed to the defendant. If it be argued that what was alleged could be shown to have lessened the value of the stock so that plaintiff would be deprived of the one-third profits that would be realized above the cost of discharging the judgment and lien, there is no duty other than that to refrain from prima facie tort. Defendant cannot be assumed to have acquired the

stock for plaintiff's best interest rather than his own. And a duty to that effect is not implied from a sale at arm's length dealing.

Lastly, the question is presented whether the fact that the stock involved in the contract represents the controlling interest in the corporation requires a change in the view to be taken. For two reasons it does not. First because it is not alleged that the wrongful sales made by defendant in any way changed that control. In fact, one of the plaintiff's grievances is that defendant has not relinquished control and threatens to retain it. It is true that in this complaint contradictory contentions cannot be given too much weight or there will be little left beyond a description of the parties. Secondly, if control is involved it can only be by sales to be made. The proper remedy, in fact the only remedy if damages will not suffice, is to compel defendant to honor his contract either by way of injunction or specific performance. If plaintiff is not going to buy, it can make no difference to him that is cognizable in law who does buy. If he wishes to buy and can and thus gain control, his remedy is not what he seeks, namely, to liquidate defendant's holdings in the market, but to enforce his right to buy if that right is threatened with frustration.

In short, the complaint presents an entire misconception of plaintiff's rights, as was recognized in the prior action. Justice buttressed by consistency dictates that it should receive the same treatment.

The order should be reversed and the complaint dismissed.

Botein, P. J., Breitel and Eager, JJ., concur with Rabin, J.; Steuer, J., dissents and votes to reverse, in opinion.

Order entered on November 17, 1960, denying defendant's motion, pursuant to rules 106 and 107 of the Rules of Civil Practice, to dismiss the complaint, affirmed, with $20 costs and disbursements to the respondent.